UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL TOTTON, et al., | No. 2:20-cv-01152-TLN-KJN |
| Plaintiffs, | |
| v. | **ORDER** |
| CITY OF SACRAMENTO, et al., | |
| Defendants. | |

This matter is before the Court on Defendants City of Sacramento ("City"), Officer Sarabjit Virk ("Officer Virk"), and Officer Linda Matthew's ("Officer Matthew") (collectively, "Defendants") Motion for Summary Judgment. (ECF No. 32.) Plaintiffs Angel Totton, Paris Flores, and Jania Johnson[1] (collectively, "Plaintiffs") filed an opposition. (ECF No. 36.) Defendants filed a reply. (ECF No. 37.) For the reasons set forth below, the Court DENIES Defendants' motion.

///

///

///

---

[1] Totton, Flores, and Johnson bring this action individually and as guardians of minor children, K.T., G.F., and R.J. (ECF No. 18 at 1.) The Court will refer to K.T., G.F., and R.J. collectively as "minor Plaintiffs" herein.

1

### I.     FACTUAL AND PROCEDURAL BACKGROUND

At approximately 10:30 a.m. on June 21, 2019, the Sacramento Police Department ("SPD") received a call about an alerted residential burglary alarm at 7608 Mandy Drive in Sacramento, California. (ECF No. 36-1 at 2.) Officer Virk was dispatched to the residence at approximately 10:31 a.m. and arrived on the scene approximately 30 minutes later. (*Id.*) Shortly after 11:19 a.m., after Officer Virk had cleared and left the scene, dispatch provided a description of the suspected burglars as being four Black males in their late teens/early twenties. (ECF No. 37-1 at 1.) The description also indicated that one suspect was wearing a red hoodie sweatshirt and jeans, a second suspect was wearing a white t-shirt and jeans, and a third suspect was wearing a black hoodie. (*Id.* at 1–2.)

Around 11:21 a.m., Officer Virk contacted the three minor Plaintiffs in a McDonald's parking lot near an intersection of Mack Road and Franklin Road in South Sacramento. (*Id.* at 2.) At the time, G.F.[2] was approximately 5'5" and 120 lbs, R.L. was approximately 5'6" and 140 lbs, and K.T. was approximately 5'4." (*Id.*) All the minor Plaintiffs were either 13 or 14 years old. (*Id.*) G.F., who is Hispanic, was wearing a white t-shirt.[3] (*Id.*) R.J., who is Black, was wearing a black hoodie sweatshirt. (*Id.*) K.T., who is also Black, was not wearing any clothing that matched the description of the suspects. (*Id.*)

After contacting minor Plaintiffs, Officer Virk exited his vehicle and unholstered his firearm. (*Id.*) Officer Virk's firearm remained unholstered until Officer Matthew arrived on the scene. (*Id.* at 3.) After Officer Matthew arrived, Virk and Matthew searched the minor Plaintiffs, confiscated their cell phones, and separated them for individual questioning. (*Id.*) Officer Virk

---

[2]     The parties use G.F. and G.M. interchangeably in various filings. (*See, e.g*, ECF No. 37-2 at 6–7 ¶ 11.) The Court will use G.F. in this Order, as those are the initials used in the Third Amended Complaint. (ECF No. 18.)

[3]     Although Defendants state (and Plaintiffs do not dispute) that G.F. was wearing jeans (ECF No. 37-1 at 2), a review of the body camera footage shows G.F. was wearing what appears to be gray gym shorts, not jeans. (Officer Matthew Video at 13:10.) In fact, none of minor Plaintiffs appear to be wearing jeans, as the two remaining minor Plaintiffs appear to be wearing sweatpants. (*Id.*)

2

later contacted another officer who advised that the burglary suspect who was wearing the black hoodie was heavy-set. (ECF No. 36-1 at 6.) Because minor Plaintiffs were not heavy-set, the officers determined that the three subjects were not the burglary suspects. (*Id.*) The officers then contacted the parents of minor Plaintiffs and released them. (*Id.*)

On October 26, 2020, Plaintiffs filed their Third Amended Complaint ("TAC"), which alleges five claims: (1) a *Monell* claim against the City based on a custom of excessive force; (2) a 42 U.S.C. § 1983 ("§ 1983") claim against the officers for unlawful seizure in violation of the Fourth Amendment; (3) a § 1983 claim against the officers for unlawful search in violation of the Fourth Amendment; (4) a § 1983 claim against the officers for excessive force in violation of the Fourth Amendment; and (5) indemnification against the City. (*Id.*) Defendants filed the instant Motion for Summary Judgment on November 30, 2021. (ECF No. 32.)

**II.   STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities*

*Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of its contention that a dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quotation omitted).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

///

///

**III.   ANALYSIS**

Defendants move for summary judgment on two grounds: (1) the individual officers are entitled to qualified immunity; and (2) there is no evidence that the City had a custom or policy of unconstitutional conduct to support a *Monell* claim. (ECF No. 32-1 at 2.) The Court will address both arguments in turn.

        A.   Qualified Immunity

Qualified immunity shields officials from civil liability where a reasonable officer would not have known that his conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987). It "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). An officer may be denied qualified immunity at summary judgment in a § 1983 suit if: (1) the facts alleged, viewed most favorably to plaintiff, show the officer violated the plaintiff's constitutional rights; and (2) the right was clearly established so a reasonable officer would have known his conduct to be unlawful. *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017). "[T]he two prongs of qualified immunity balance two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes." *Id*. at 822.

The Court will first address Plaintiffs' unlawful search and seizure claims (Claims Two and Three) and then Plaintiffs' excessive force claim (Claim Four).

           *i.   Unlawful Search and Seizure*

Defendants argue there was no constitutional violation because the officers had reasonable suspicion to believe minor Plaintiffs were the burglary suspects. (ECF No. 32-1 at 6.) More specifically, Defendants contend minor Plaintiffs had similar physical descriptions to the burglary suspects and were detained only a mile from the scene of the burglary. (*Id.*) In opposition, Plaintiffs argue there was no reasonable suspicion for the stop. (ECF No. 36 at 4.)

The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Ninth Circuit has held that "individuals may not be subjected to seizure or arrest without reasonable suspicion or probable

5

1 cause." *Green v. City & Cnty. of S.F.*, 751 F.3d 1039, 1052 (9th Cir. 2014).  To show reasonable
2 suspicion, there must be "specific, articulable facts which, together with objective and reasonable
3 inferences, form the basis for suspecting that the particular person detained is engaged in criminal
4 activity." *U.S. v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000).

5       In the instant case, the Court is not convinced that the officers had reasonable suspicion
6 for the stop.  Defendants' primary argument is that minor Plaintiffs matched the description of the
7 burglary suspects.  (ECF No. 32-1 at 6.)  However, in reviewing the officers' body camera
8 footage in the light most favorable to Plaintiffs, a reasonable juror could conclude that minor
9 Plaintiffs did *not* match the description of the burglary suspects.  All three minor Plaintiffs —
10 who were between 13 and 14 years old — appear significantly younger than the four burglary
11 suspects, who were reported to be in their late teens/early twenties.  (*See* Officer Matthew Video
12 at 20:45–21:10.)  Further, while the burglary suspects were reported to be four Black males,
13 minor Plaintiffs were two Black males and one Hispanic male.  (*Id.*)  K.T. was not wearing any
14 clothing matching the description of a burglary suspect.  (*Id.*)  While one of the suspects was
15 described as wearing a white t-shirt and jeans, the only minor Plaintiff wearing a white t-shirt,
16 G.F., was not wearing jeans.  (*Id.* at 13:10.)  Indeed, despite two of the suspects being described
17 as wearing jeans, none of minor Plaintiffs were wearing jeans.  (*Id.*)

18       Because reasonable minds could differ as to whether minor Plaintiffs matched the
19 description of the burglary suspects, the Court cannot conclude as a matter of law that the officers
20 had reasonable suspicion for the stop.  As such, Defendants are not entitled to qualified
21 immunity.[4]  *See Longoria v. Pinal Cnty.*, 873 F.3d 699, 709–10 (9th Cir. 2017) (denying qualified
22 immunity at summary judgment where fact and credibility issues were to be decided by a jury);
23 *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010) (affirming denial of summary
24 judgment on qualified immunity because "there are genuine issues of fact regarding whether the
25 officers violated [the plaintiff's] Fourth Amendment rights[, which] are also material to a proper
26 determination of the reasonableness of the officers' belief in the legality of their actions").

---

[4]  Defendants only argue there is no constitutional violation and do not argue there is no clearly established law in the context of these claims.  (*See* ECF No. 32-1 at 6–7.)

Accordingly, the Court DENIES Defendants' motion for summary judgment as to the unlawful search and seizure claims (Claims Two and Three).

### ii.    Excessive Force

Defendants argue it is not clearly established that an officer drawing his gun to a "low ready" position during a detention violates the Fourth Amendment. (ECF No. 32-1 at 7.) Defendants also argue it was reasonable for Officer Virk to believe minor Plaintiffs were armed and dangerous because they matched the descriptions of the burglary suspects, the stop occurred less than a mile from the scene of the burglary and less than an hour from it being reported, and a firearm and box of bullets were reported stolen from the home. (*Id.*)  In opposition, Plaintiffs contend it is clearly established that drawing weapons during an investigatory stop based only on reasonable suspicion violates the Fourth Amendment. (ECF No. 36 at 6.)  Plaintiffs further argue there are factual questions that preclude summary judgment. (*Id.* at 7.)

The Fourth Amendment permits an officer making an arrest to use force, but only an amount that is objectively reasonable under the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  In determining whether an officer's actions were objectively reasonable, the Court "must balance the nature of the intrusion upon an individual's rights against the countervailing government interests at stake, without regard for the officers' underlying intent or motivations." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019), *cert. denied sub nom. Browder v. Nehad*, 141 S. Ct. 235 (2020).  "Whether a use of force was reasonable will depend on the facts of the particular case, including, but not limited to, whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue." *Id.* "The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety." *Id.* "[T]he reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997).  "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012).

The Court agrees with Plaintiffs that there are factual disputes precluding summary judgment. Defendants' argument about a lack of clearly established law relies on a finding that Officer Virk never pointed the firearm at Plaintiffs and simply held the firearm at a "low ready" position. (ECF No. 36-1 at 5.) However, Plaintiffs cite depositions from G.F. and R.L. to argue there is evidence that Officer Virk pointed the firearm at minor Plaintiffs. (ECF No. 36-2 at 2 (citing ECF No. 36-5 at 10 (G.F. stating Officer Virk pointed the firearm at him for 20 to 30 seconds); ECF No. 36-6 at 9–10 (R.L. stating Officer Virk pointed the firearm at him with two hands).) The body camera footage is not conclusive one way or the other. Officer Virk's body camera footage shows him exit his vehicle and initially hold his firearm in a way that could be perceived as being pointed at minor Plaintiffs above his vehicle door as he says, "Don't do anything stupid" and tells them to "Get on the ground." (Officer Virk Video at 00:52–00:56.) Officer Virk lowers his firearm behind vehicle door as he continues speaking, and the firearm eventually leaves the body camera's view. (*Id.* at 00:56–01:20.) Taking Plaintiffs' evidence as true and drawing reasonable inferences in their favor, a reasonable juror could find Officer Virk pointed his firearm at minor Plaintiffs during the encounter, especially considering the firearm looked as if it was pointed toward minor Plaintiffs when Officer Virk first exited his vehicle and was not visible on the body camera during the entire encounter.

Moreover, a reasonable juror could find that minor Plaintiffs did not pose an immediate threat to Officer Virk. Defendants argue Officer Virk had reason to believe minor Plaintiffs were armed and dangerous because they matched the description of the burglary suspects and a firearm and bullets were reported stolen from the home. (ECF No. 32-1 at 7.) The Court has already found there are triable issues of material fact as to whether minor Plaintiffs matched the description of the burglary suspects. Further, it is undisputed that SPD did not become aware that a firearm and bullets were stolen from the home until 11:30 a.m. — after Officer Virk had already stopped minor Plaintiffs and drawn his weapon. (ECF No. 37-1 at 3.) Lastly, the body camera footage shows that minor Plaintiffs looked to be young teenagers, did not appear to be threatening, and were compliant throughout the stop. (*See generally* Officer Virk and Officer Matthew Videos.)

In sum, a trier of fact should resolve the factual disputes and credibility determinations as to whether Officer Virk pointed his firearm at minor Plaintiffs — and if so, whether Officer Virk's actions were reasonable. *See Green*, 751 F.3d at 1052 ("It was established at the time of the incident that individuals may not be subjected to seizure or arrest without reasonable suspicion or probable cause, especially when the stop includes detention and interrogation at gunpoint, and that highly intrusive measures may not be used absent extraordinary circumstances."); *Thompson v. Rahr*, 885 F.3d 582, 587 (9th Cir. 2018) ("[P]ointing guns at persons who are compliant and present no danger is a constitutional violation."); *Tekle v. United States*, 511 F.3d 839, 845 (9th Cir. 2007) ("[T]he pointing of a gun at someone may constitute excessive force, even if it does not cause physical injury.").

For all these reasons, the Court DENIES Defendants' motion for summary judgment as to the excessive force claim (Claim Four).

### B. *Monell* Claim

Defendants argue Plaintiff is unable to produce evidence of a policy or custom to support a *Monell* claim against the City. (ECF No. 32-1 at 8.) In opposition, Plaintiffs argue there is sufficient evidence to create a triable issue of material fact based on SPD's lack of necessary policies and failure to properly train and supervise its officers. (ECF No. 36 at 10–11.)

"A municipality cannot be held liable under § 1983 on a respondent superior theory." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 659 (1978). To bring a *Monell* claim against a municipality, a plaintiff must establish "the local government had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation [he] suffered." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The inadequacy of police training may serve as the basis of *Monell* liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). To impose liability against a municipality for deficiencies in its policies or procedures, or for a failure to adequately train its employees, Defendants' omissions must amount to "deliberate indifference" to a constitutional right. *Id.*; *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate

indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation and internal quotation marks omitted).  In rare instances, however, a plaintiff may rely on "single-incident" liability, which is when "unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64.

Plaintiffs cite three sources of information that they argue create a factual dispute precluding summary judgment as to their *Monell* claim.  (ECF No. 36 at 9.)  First, Plaintiffs argue that in response to their discovery requests for "policies regarding the detention of juveniles," "policies regarding an officer unholstering their gun," "policies regarding an officer pointing their gun at a member of the public," and "policies regarding a field show up," Defendants produced General Orders 260.03 (firearms training/qualification) and 580.04 (firearms).  (*Id.* (citing ECF No. 36-4.))  Plaintiffs argue "neither of these documents provide instructions or direction regarding the detention of juveniles, unholstering one's gun, or when it is appropriate to point a gun at a member of the public."  (*Id.*)  Second, Plaintiffs cite a 2019 California Department of Justice Report (the "DOJ Report"), which recommended in relevant part that SPD should "more clearly define and describe when force is, and is not, authorized," "affirm the importance of proportionality," and "prohibit certain problematic uses of force."  (*Id.* (citing *Sacramento Police Department Report & Recommendations 2019*, California Department of Justice, available at https://oag.ca.gov/system/files/attachments/press-docs/spd-report.pdf (last accessed Aug. 26, 2022)).)  Third, Plaintiffs cite allegations in the TAC about several excessive force lawsuits against SPD.  (*Id.* at 7–9.)

The Court agrees with Defendants that the excessive force cases Plaintiffs cite are not similar enough to the instant case to show a pattern of constitutional violations amounting to deliberate indifference.  For example, only two of the cases cited involved firearms.  (ECF No. 18 at 7); *see Connick*, 563 U.S. at 63 ("Because those incidents are not similar to the violation at issue here, they could not have put [the defendant] on notice that specific training was necessary to avoid this constitutional violation.").  However, a trier of fact could find that the DOJ Report — which was published in early 2019 before this incident took place — put SPD on notice that

their use-of-force policies were deficient, and that training was obviously necessary to avoid constitutional violations. *Harris*, 489 U.S. at 390–91. Indeed, the DOJ Report specifically advises SPD that it should "provide specific guidance on when to unholster, draw, and exhibit firearms," which is a central issue in the instant case. *See Sacramento Police Department Report & Recommendations 2019* at 5. Notably, Defendants did not address the DOJ Report in their reply. (*See* ECF No. 37.)

Accordingly, the Court DENIES Defendants' motion for summary judgment as to the *Monell* claim (Claim One).

### IV. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendants' Motion for Summary Judgment. (ECF No. 32.) The parties are ORDERED to file a Joint Status Report not later than thirty (30) days of the electronic filing date of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

**DATED: September 21, 2022**

Troy L. Nunley
United States District Judge